Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

————

Argued  October  31,  2003          Decided  January  6,  2004

No. 02-3077

UNITED STATES OF AMERICA,
APPELLEE

v.

JEROME D. WASHINGTON,
APPELLANT

————

Appeal from the United States District Court
for the District of Columbia
(No. 01cr00355–01)

————

*Lisa B. Wright*, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was *A. J. Kramer*, Federal Public Defender. *Neil H. Jaffee* and *Shawn Moore*, Assistant Federal Public Defenders, entered appearances.

*David B. Goodhand*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Roscoe C. Howard, Jr.*, U.S. Attorney, and *John R. Fisher, Thomas J. Tourish, Jr.*, and *Stephen J. Pfleger*, Assistant U.S. Attorneys.

Before: GINSBURG, *Chief Judge*, GARLAND, *Circuit Judge*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Chief Judge* GINSBURG.

GINSBURG, *Chief Judge*: A jury found Jerome Washington guilty of (1) conspiracy to commit carjacking and to sell or possess a stolen motor vehicle; (2) four counts of carjacking; (3) four counts of armed kidnaping; (4) four counts of armed robbery; (5) two counts of sale or possession of a stolen motor vehicle; (6) assault with intent to kidnap while armed; (7) assault with intent to rob while armed; (8) and third-degree sexual abuse. Washington challenges his conviction upon the grounds that the district court (1) erred in denying his motion to suppress testimony regarding one victim's out-of-court identification of him; and (2) abused its discretion in denying Washington's motion to deliver his own closing argument. We conclude the district court's denial of Washington's motion to suppress, if an error, was harmless beyond a reasonable doubt; and the district court did not abuse its discretion in denying Washington's motion to deliver his own closing argument. We therefore affirm Washington's conviction.

## I. Background

According to the testimony adduced at trial, Washington and a co-conspirator, Daniel Neal, committed a series of carjackings and attempted carjackings in April 2001. In one instance Washington and Neal, armed with steak knives, carjacked and robbed Katherine Layne and her passenger, Melissa Mayne. After Washington and Neal forced their way into Layne's car and put Mayne in the back seat, Washington drove them to an alley, where the two men stole Mayne's credit cards and Layne's driver's license. Washington then drove Neal and the two women to a parking lot behind a grocery store, near an ATM machine. Washington got out of the car and used Mayne's ATM card to withdraw $300. Washington then released the two women and drove off with Neal in Layne's car.

Nine days later, police detectives showed Layne an array of nine photographs, including Washington's. Layne did not identify any of the subjects as her assailant. Approximately five months later Layne viewed a lineup of seven African–American men, again including Washington. This time Layne said she was not certain, but her assailant "might be number two," that is, Washington. Unfortunately, Washington was the only person who had appeared in both the photo array and the subsequent lineup.

Washington moved to suppress the lineup identification as "the unreliable product of a suggestive identification procedure." The district court denied Washington's motion, without prejudice, noting the prosecution had not yet turned over the photo array it had shown to Layne. The court invited defense counsel to renew the motion "if, as, or when we get to the array question." Tr. 2/7/02, at 17. Defense counsel then argued, "there's no one else who's displayed to her on both occasions.... [T]hat, to me, would indicate a suggestive identification procedure." *Id.* at 18. The district court stated Washington would "just ... have to have [the] record [for appeal] on that point," but observed:

> [I]t may be that there's a continuum here, that if she had been shown an array in the morning and spent an hour with it, ... couldn't identify anybody, ... and that afternoon had been shown a lineup and Mr. Washington were the only person in the lineup who was also in the array, you might have a much better case than you do on the face of the record today when there was a passage of some five months between the viewing of the array [and the lineup]. We don't know how much time she spent with the array. We don't know ... what the array looked like. And accordingly, the denial is ... without prejudice.... You will get the array, and you will have a chance to renew the motion if you choose to.

*Id.* at 18–19.

As it happened, the Government could not locate for trial the photo array Layne had been shown nine days after the crime. Defense counsel, in arguing the identification proce-

dure was suggestive, eventually introduced an array of six photographs the FBI had shown to other witnesses. Counsel never renewed the motion to suppress Layne's identification.

On the last day of trial — after the Government had rested its case and the defense had announced that Washington would not take the stand — defense counsel informed the district court that Washington "wanted to do his own closing argument." Tr. 5/17/02, at 3. The Government objected, arguing that Washington's request was merely an attempt to argue to the jury while evading cross-examination. The court agreed and denied Washington's request.

On appeal Washington first argues the district court should have excluded testimony regarding Layne's having identified him in the lineup; he maintains the identification process was impermissibly suggestive and the admission of the testimony therefore violated his right to due process of law under the Fifth Amendment to the Constitution of the United States. The Government counters (1) Washington has forfeited this argument because he did not renew his motion to suppress; (2) the lineup was not suggestive; (3) the identification was reliable; and (4) any error was harmless beyond a reasonable doubt. Washington also argues — and the Government denies — he had the right, under the Sixth Amendment to the Constitution of the United States, to deliver his own closing argument.

## II. Analysis

Preliminarily, we reject the Government's argument that Washington did not properly preserve his objection to the admission of Layne's identification. Upon denying Washington's motion to suppress, the district court invited him to renew the motion "if, as, or when" the Government provided him with the photo array it had shown to Ms. Layne. The Government never produced the array; it cannot now fault Washington for failing to renew his motion.

A. Suggestive Identification

In considering whether evidence of an identification runs afoul of the Due Process Clause, we must first determine

whether the identification process was impermissibly suggestive. *See Neil v. Biggers*, 409 U.S. 188, 197 (1972). If it was, then the court must "examine whether, under the totality of the circumstances, the identification was sufficiently reliable to preclude a substantial likelihood of misidentification." *United States v. Washington*, 12 F.3d 1128, 1134 (D.C. Cir. 1994) (citing *Manson v. Brathwaite*, 432 U.S. 99, 113–16 (1977)). To that end, the court must consider "the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of his description of the criminal, the level of certainty demonstrated at the confrontation, and the time between the crime and the confrontation." *Id.* (citing *Biggers*, 409 U.S. at 197). The identification may be admitted if its "reliability outweigh[s] its suggestiveness." *Id.*

Washington argues the identification procedure was impermissibly suggestive and the district court therefore erred in foregoing "any inquiry into reliability." To be sure, the use of a photo array prior to a lineup identification may be impermissibly suggestive where there is only one "repeat player." *See Simmons v. United States*, 390 U.S. 377, 383–84 (1968) (use of photographs prior to lineup may create risk of false identification because witness "is apt to retain in his memory the image of the photograph," but "convictions based on eye witness identification at trial following a pretrial identification by photograph will be set aside . . . only if the photographic identification procedure was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification"); *Foster v. California*, 394 U.S. 440, 443 (1969) (identification obtained after victim viewed defendant in two lineups and one-on-one violated due process where defendant was only person in both lineups); *United States v. Sanders*, 479 F.2d 1193, 1197–98 (D.C. Cir. 1973) ("In the totality of the circumstances . . . the suggestive confrontations of the witnesses with the photographs and lineup gave rise to a very substantial likelihood of irreparable misidentification"). In this case, however, we need not decide whether the district court erred in failing to evaluate the reliability of the identification under *Neil v. Biggers* because

the admission of Layne's testimony was harmless beyond a reasonable doubt.

B.   Harmless Error

"Error is harmless if it appears 'beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained.'" *United States v. Green*, 254 F.3d 167, 170 (D.C. Cir. 2001) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)).  "[I]t is the evidence before the jury that determines whether a conviction survives harmless error review."  *Id.* at 173.

Here, there was abundant evidence of Washington's guilt apart from Layne's identification.  Co-conspirator Neal testified in detail about Washington's participation in the carjackings and attempted carjackings.  Another co-conspirator, Shekita Williams, testified that Washington had told her he had robbed Layne and another woman.  Significant physical evidence connected Washington to the crimes of which he was convicted.  For example, a credit card belonging to one of the victims was found in Washington's pocket at the time of his arrest.  Upon searching the motel room shared by Washington, Neal, and Williams police found other physical evidence, including two steak knives, Layne's driver's license, and Mayne's ATM card.

Moreover, the potential impact on the jury of Layne's lineup identification was slight because it was, at best, equivocal; she said only that her assailant "might be number two." Washington's counsel further denigrated Layne's identification, suggesting both in his cross-examination of Layne and in his closing argument that it was the unreliable product of a suggestive procedure.  Finally, in its closing argument the Government did not rely substantially upon Layne's identification to make its case.  The prosecutor devoted most of his closing argument to a discussion of the testimony of Neal and Williams, mentioning Layne's identification only briefly.

In these circumstances it appears "beyond a reasonable doubt" that admission of Layne's out-of-court identification of

Washington "did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24.

C. Request to Deliver Closing Argument

A person accused of a crime has an absolute right, under the Sixth Amendment, to represent himself only if he asserts that right before trial. *See United States v. Dougherty*, 473 F.2d 1113, 1124 (D.C. Cir. 1972) ("[T]he fundamental right to conduct the case *pro se* is one that must be claimed timely, before the trial begins"); *see also United States v. Bishop*, 291 F.3d 1100, 1114 (9th Cir. 2002) ("A demand for self-representation is timely if made before meaningful trial proceedings have begun"). A defendant does not have a right to combine self-representation with representation by counsel. *See United States v. Tarantino*, 846 F.2d 1384, 1420 (D.C. Cir. 1988) (no constitutional right to hybrid representation); *cf. McKaskle v. Wiggins*, 465 U.S. 168, 183 (1984) ("A defendant does not have a right to choreograph special appearances by counsel"). We therefore review only for abuse of discretion the district court's denial of Washington's motion to deliver his own closing argument. *See Dougherty*, 473 F.2d at 1124 ("When the *pro se* right is claimed after trial has begun, the court exercises its discretion").

The district court clearly did not abuse its discretion in denying Washington's request, which came at the close of trial, after the Government had rested its case and the defense had announced that Washington would not testify on his own behalf. In view of the timing and the specific nature of the request — not to take over from counsel for the remainder of the case but rather "to do his own closing argument" — the district court was reasonably concerned with preventing Washington from "basically . . . testify[ing] without having to be cross-examined." Tr. 5/17/02, at 4; *see Bishop*, 291 F.3d at 1114 (affirming trial court's denial of defendant's request to deliver closing argument).

### III.  Conclusion

For the foregoing reasons, Washington's conviction is

*Affirmed.*