**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff-Appellee*,

v.

WILLENA STARGELL,
*Defendant-Appellant*.

No. 11-50392

D.C. No.
5:09-cr-00005-
TJH-1

OPINION

Appeal from the United States District Court
for the Central District of California
Terry J. Hatter, Senior District Judge, Presiding

Argued and Submitted
March 7, 2013—Pasadena, California

Filed August 2, 2013

Before: Sidney R. Thomas, Andrew D. Hurwitz, Circuit
Judges, and Ralph R. Beistline, Chief District Judge.[*]

Opinion by Judge Beistline

---

[*] The Honorable Ralph R. Beistline, Chief United States District Judge for the District of Alaska, sitting by designation.

## SUMMARY[**]

### Criminal Law

The panel affirmed a defendant's convictions and sentence for fraud by wire affecting a financial institution, aiding and assisting in the preparation of a false return, fraud by wire, and aggravated identity theft, arising out of the defendant's work as a tax preparer.

The panel held that new or increased risk of loss is sufficient to establish that wire fraud "affects" a financial institution within the meaning of 18 U.S.C. § 1343, and that there was sufficient evidence for a rational jury to conclude that the defendant's fraudulent returns exposed the banks to an increased risk of loss.

Because the wire fraud that was the predicate to the aggravated identity theft did not occur until after 18 U.S.C. § 1028A's enactment date, the panel rejected the defendant's contention that the jury may have convicted the defendant based solely on pre-enactment conduct.

The panel rejected the defendant's contention that government and the district court infringed on the core of her defense counsel's role, in violation of the defendant's Sixth Amendment rights, by allowing the defendant's former attorney to testify at sentencing regarding the loss and restitution calculations, where the former attorney was called by the defendant's new attorney. Because the former

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

attorney's testimony did not contain privileged communications, the panel rejected the defendant's contention that admission of the testimony violated the attorney-client privilege.

The panel held that the district court did not clearly err in calculating the loss and restitution amounts.

## COUNSEL

Marisa L. D. Conroy (argued), Encinitas, California, for Defendant-Appellant.

André Birotte, Jr., United States Attorney; Antoine F. Raphael, Assistant United States Attorney, Joseph R. Widman, Assistant United States Attorney, Ryan White (argued), Assistant United States Attorney, United States Attorneys' Office, Riverside, California, for Plaintiff-Appellee.

## OPINION

BEISTLINE, Chief District Judge:

Willena Stargell appeals her convictions of twelve felonies arising out of her work as a tax preparer for various clients.

The superseding indictment charged fraud by wire affecting a financial institution (Counts 1 to 6); aiding and assisting in the preparation of a false return (Counts 7 to 12); fraud by wire (Counts 13 to 15); and aggravated identity theft

(Counts 16 to 18).  The district court dismissed Counts 6, 12, and 18 on the government's motion.  After the district court granted her motion for acquittal on Counts 3, 9, and 15, Stargell was convicted on the remaining charges. She claims that the district court erred by: (1) failing to grant her motion for judgment of acquittal as to Counts 1, 2, 4, and 5 of the superseding indictment despite the government's failure to prove that the underlying conduct affected a financial institution; (2) permitting convictions on Counts 16 and 17 without excluding the possibility that they were based on conduct that preceded the enactment of 18 U.S.C. § 1028A; (3) allowing Stargell's former attorney to testify at the sentencing hearing; and (4) improperly calculating loss and restitution amounts.

We have jurisdiction under 28 U.S.C. § 1291, and we affirm the convictions and sentences.

## I

## A

After completing a course on tax preparation and receiving state certification, Stargell began preparing taxes for Liberty Tax Service ("LTS") in Moreno Valley, California.  LTS terminated Stargell's employment in 2003, and Stargell began her own tax preparation business, called Liberty Bell Tax Service ("LBTS").

The evidence at trial established that while operating LBTS, Stargell prepared federal income tax returns containing false statements and engaged in schemes to obtain refund anticipation loans ("RAL") from banks based on these fraudulent returns.  In some instances, the IRS detected the

fraud and declined to issue a tax refund, resulting in a loss to the banks that made the RALs. The government also proved that Stargell engaged in identity theft by using the names and social security numbers of former clients or other individuals, without their knowledge or consent, to file tax returns and to request RALs.

**B**

Before sentencing, the district court held two evidentiary hearings to determine loss and restitution. At the latter hearing, Kay Otani, former counsel for Stargell, testified as a witness. Stargell's current counsel, the district court, and the government inquired as to Otani's method of calculating loss and restitution, what documents he sought to obtain from the government, how those documents would have assisted or disadvantaged him, and what was ultimately provided to him.

At the conclusion of the hearing, the district court found an offense level of twenty-two, a criminal history category of I, and an advisory guideline range of forty-one to fifty-one months. The district court imposed a $1200.00 special assessment, restitution in the amount of $362,796.07, and incarceration for forty-two months. This appeal followed.

**II**

**A**

Stargell contends that the district court erred in failing to grant her motion for acquittal as to Counts 1, 2, 4, and 5 because the government failed to prove that such counts "affected a financial institution" as required by 18 U.S.C. § 1343. Stargell's argument is unpersuasive.

"Where a defendant moves for acquittal at the close of the government's evidence, we review *de novo* whether sufficient evidence exists to support a guilty verdict." *United States v. Stewart*, 420 F.3d 1007, 1014–15 (9th Cir. 2005) (citing *United States v. Carranza*, 289 F.3d 634, 641 (9th Cir. 2002)). Our review of the sufficiency of the evidence supporting a criminal conviction is to determine "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). We do not ask whether *we* "believe[] that the evidence at the trial established guilt beyond a reasonable doubt." *Id.* at 319 (quoting *Woodby v. INS*, 385 U.S. 276, 282 (1966)). "Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.*

Special Agent Juan Marquez of the IRS's Criminal Investigations Division ("IRS-CID") testified as a summary witness pursuant to Rule 1006 of the Federal Rules of Evidence. Agent Marquez presented a summary chart based upon his review of 143 tax returns,[1] all of which either listed Stargell as the tax preparer or were connected to her company, LBTS. The summary chart demonstrated that each of the 143 tax returns contained either false wage or false withholding figures, and that the vast majority contained both false wage and false withholding figures. Every return listed in the summary chart sought a refund, and the total refunds

---

[1] IRS maintains tax records and information in its Integrated Data Retrieval System ("IDRS"). The IDRS contains information regarding filed tax returns and information provided by third parties, including employers and financial institutions.

sought amounted to $598,657.00. The IRS refunded $276,331.74 in connection with these returns before it stopped the remaining claimed refunds.

Agent Marquez also testified that banks funded a RAL for each of the tax returns listed in the summary chart. When a bank issued a RAL and the IRS later stopped the refund for the related return, the bank was not able to recoup the value of the RAL and suffered a financial loss.

To the government, the lost refund money was the main "effect" that Stargell's actions had on the banks. Yet, the banks only lost money with respect to two of the four counts of fraud charged in the indictment: Count 1 ($4,995.22) and Count 4 ($6,013.00). The summary chart clearly shows that the banks did not lose any refund money on the other two tax returns in question here. Nevertheless, the government argues that because RALs based on fraudulent returns are riskier than RALs based on non-fraudulent returns, Stargell's fraud scheme "affected" the banks by exposing them to an increased risk of loss. The banks were affected by Stargell's fraud scheme, the government argues, regardless of whether there was an actual financial loss.

We agree. Our sister circuits have defined the term "affects" within the meaning of a similar statute, 18 U.S.C. § 3293(2), to include new or increased risk of loss to financial institutions. *See United States v. Mullins*, 613 F.3d 1273, 1278–79 (10th Cir. 2010) (holding that a new or increased risk of loss is sufficient to establish that wire fraud affects a financial institution); *United States v. Serpico*, 320 F.3d 691, 694 (7th Cir. 2003) (holding that fraud affects a bank if the bank is exposed to an increased risk of loss, even if the bank never suffers an actual loss). Although § 3293(2) and § 1343

are separate provisions—the former extends the statute of limitations to ten years for offenses that affect a financial institution, while the latter defines the offense of wire fraud—we see no reason why they should hold different meanings with respect to the term "affects." Accordingly, we hold that new or increased risk of loss is sufficient to establish that wire fraud "affects" a financial institution within the meaning of 18 U.S.C. § 1343.

Here, there was sufficient evidence for a rational jury to conclude that Stargell's fraudulent returns exposed the banks to an increased risk of loss. The senior risk analyst for one of the banks testified that 79.9% of the RALs issued in connection with Stargell's fraud scheme resulted in a loss to the bank, compared with a general loss rate of less than 1% for non-fraudulent RALs. Therefore, there was sufficient evidence for a rational jury to conclude that Stargell's fraud scheme affected the banks within the meaning of 18 U.S.C. § 1343, regardless of whether the banks ultimately suffered any actual loss. The district court did not err in denying Stargell's motion to acquit as to Counts 1, 2, 4, and 5.

**B**

Stargell claims for the first time on appeal that because the government's case regarding Counts 13 and 14 (wire fraud, 18 U.S.C. § 1343)—the predicate offenses for Counts 16 and 17 (aggravated identity theft, 18 U.S.C. § 1028A)—focused significantly on conduct that pre-dated the enactment of § 1028A on July 15, 2004, the jury may have convicted Stargell based solely on pre-enactment conduct. However, because the wire fraud did not occur until January 15 and 18, 2005, the predicate offenses for the aggravated identity theft transpired well after § 1028A's enactment date.

Under 18 U.S.C. § 1028A(a)(1), "[w]hoever, *during and in relation to any felony violation* . . . , knowingly transfers, possesses, or uses, without lawful authority, a means of identification of another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."    (emphasis added).[2] Additionally, under 18 U.S.C. § 1343, "[w]hoever, having devised . . . any scheme for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, *transmits* or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings . . . for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both." (emphasis added).

In proving its case on wire fraud and on the related identity theft, the government referenced Stargell's ongoing wire fraud scheme starting in February 2004 and ending on approximately January 27, 2005. Although the government demonstrated that the *scheme* partially took place prior to the enactment date of § 1028A, the superseding indictment clearly shows that the tax returns in question were not filed, and thus were not *transmitted*, until January 2005. Transmission is a required element of wire fraud under § 1343. Consequently, the wire fraud did not occur until the returns were filed in January 2005, a full six months after § 1028A was enacted. The predicate offenses for Counts 16 and 17, therefore, happened *after* § 1028A was enacted. Accordingly, the jury was not wrong in convicting Stargell of

---

[2] For purposes of 18 U.S.C. § 1028A, the term "any felony violation" is specifically defined as one of the felonies enumerated in § 1028A(c). Counts 13 and 14 fall under § 1028A(c)(5).

aggravated identity theft while relying on the predicate wire fraud offenses.

## C

Stargell argues, again for the first time on appeal, that the government and the district court infringed on the core of her defense counsel's role by allowing Stargell's former attorney, Otani, to testify at sentencing regarding the loss and restitution calculations. Stargell also contends that since she did not expressly consent to Otani giving testimony, the attorney-client privilege was violated. We disagree.

### 1

"Government violates the right to effective assistance when it interferes in certain ways with the ability of counsel to make independent decisions about how to conduct the defense." *Perry v. Leeke*, 488 U.S. 272, 279–80 (1989) (internal quotation marks and citation omitted). There was no violation here because it was Peter Swarth, Stargell's new defense attorney, who called Stargell's former attorney to testify at the sentencing hearing. Swarth examined Otani concerning the discovery of audit files and other documents requested from the IRS. The transcript is clear that Swarth acted independently in calling Otani to testify in the second sentencing hearing and that there was no interference or restriction of any kind with Swarth's presentation of the defense. Because there was no interference, Stargell's Sixth Amendment rights were not violated.

**2**

Stargell additionally contends that the admission of Otani's testimony violated the attorney-client privilege. Because Otani's testimony did not contain privileged communications, the argument fails.

Otani's testimony did not include protected attorney-client communications of any kind. The majority of Otani's testimony dealt with audit documents requested by Otani from the IRS through discovery while Otani was Stargell's defense attorney. In the entirety of Otani's testimony, nothing he said or referenced came from Stargell. Therefore, the attorney-client privilege was not implicated. *See United States v. Ruehle*, 583 F.3d 600, 607 (9th Cir. 2009) (explaining the attorney-client privilege only covers communications made in confidence by the client); *id.* ("The fact that a person is a lawyer does not make all communications with that person privileged.") (internal quotation marks and citation omitted).

**D**

Stargell alleges that the district court committed three errors in computing the amounts of loss and restitution in this case. First, she argues that the district court never actually made a finding regarding the amount of loss. Second, she argues that even if the district court made a loss finding, its finding was unsupported by the evidence because the amount should not have included qualified refunds. And third, she argues that the restitution amount should not have included refunds the taxpayers were legally entitled to claim. We find that the district court did not clearly err in calculating the loss and restitution amounts.

"A calculation of the amount of loss is a factual finding reviewed for clear error." *United States v. Garro*, 517 F.3d 1163, 1167 (9th Cir. 2008). Under the clearly-erroneous standard, a reviewing court will not reverse a lower court merely because the reviewing court "'would have decided the case differently.'" *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985)). "[A] reviewing court must ask whether, 'on the entire evidence,' it is 'left with the definite and firm conviction that a mistake has been committed.'" *Id.* (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)). In short, the clearly erroneous standard is "significantly deferential." *N. Queen Inc. v. Kinnear*, 298 F.3d 1090, 1095 (9th Cir. 2002).

**1**

When determining a loss amount for sentencing purposes, a district court must "provide reasoning to explain its determination of [such] loss." *Yeung*, 672 F.3d at 604–05. "Although the district court's findings . . . must be 'express,' they need only state the court's resolution of the disputed issues." *United States v. Karterman*, 60 F.3d 576, 583 (9th Cir. 1995). If a district court does not provide such a resolution, "we must remand for the district court to recalculate and provide its reasoning for th[e] award." *Yeung*, 672 F.3d at 604–05.

Stargell argues that the district court should have made an explicit finding regarding the loss amount or, at a minimum, explicitly adopted the government's loss position. But the district court *did* adopt the government's suggested loss amount. The district court stated, "It just appears to me that as had been suggested by you [the government] previously

that using either standard that *you've been able to meet your burden*. And it very well may be that under this set of circumstances, that clear and convincing would be proper. And *I'm satisfied with it*." (emphasis added). The district court adequately resolved the loss amount dispute in favor of the government by holding that the government had established the loss amount by clear and convincing evidence. In total, the banks lost $107,931.96 in connection with the 143 fraudulent tax returns listed in the summary chart.

**2**

Stargell further alleges that the district court mistakenly included in the loss amount the refunds to which the affected taxpayers were entitled. Stargell's argument is unpersuasive.

Under the Sentencing Guidelines, "[i]f the offense involved tax evasion or a fraudulent or false return, statement, or other document, *the tax loss is the total amount of loss that was the object of the offense (i.e., the loss that would have resulted had the offense been successfully completed)*." U.S.S.G. § 2T1.1(c)(1) (emphasis added). Here, the government recommended that the tax-loss amount equal the entire loss that would have resulted had Stargell's schemes been successfully completed—in other words, the total refund amount claimed on all of the fraudulent returns. The district court adopted the government's total loss figure.

Concerning the tax-loss amount, a district court should "make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 cmt. n.1. Moreover, if higher than the actual loss amount, the *intended* loss amount should be used. *United States v. Riley*, 143 F.3d 1289, 1291–92 (9th Cir. 1998). It is not the government's or the district court's

responsibility to establish that defendant's filed returns were entitled to refunds if no entitled-refund information was offered by the defendant. *See United States v. Bishop*, 291 F.3d 1100, 1116 (9th Cir. 2002) ("It is not the government's or the court's responsibility to establish the defendants' itemized deductions, if no itemized deduction information was offered by the defendants.").

Stargell failed to provide any substantial evidence to support her contention that she gave, or intended to give, the involved taxpayers the refunds to which they were entitled. The district court's conclusion that Stargell *intended* to keep the total amount of refunds claimed in the fraudulent returns was reasonable based on the evidence in the record. Likewise, using that amount as the "total tax loss" was also reasonable.

At sentencing, the onus was on Stargell to establish a lower tax-loss amount based on the entitled refund, but she did not. *See Bishop*, 291 F.3d at 1116. Even at the appellate level, Stargell has neither pointed to any evidence establishing that the involved taxpayers were entitled to a refund nor provided an entitled-refund amount by which the tax-loss figure should be decreased.

Based on the record and in light of the dearth of evidence to the contrary, the district court's acceptance of the government's loss figure—the total refund amount claimed on all of the fraudulent returns—was a "reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 cmt. n.1.[3]

---

[3] Absent evidence to the contrary, it is also a reasonable presumption that each of the involved taxpayers would have had to file a *non*-fraudulent return in order to obtain any refund to which he or she would

**3**

Stargell also argues that the restitution amount determined by the district court, like the tax-loss amount, included refunds that the affected taxpayers were potentially entitled to claim. A restitution amount can be calculated from "losses proximately resulting from [a defendant's] criminal conduct." *Yeung*, 672 F.3d at 606. Therefore, it was not error for the district court to base Stargell's restitution amount on the actual losses minus the amount of paid-in withholding.

**III**

For all the reasons above, we affirm the judgment of the district court.

**AFFIRMED.**

---

have been entitled. Carrying out Stargell's fraud schemes to their completion, therefore, would have required the IRS to pay the total amount of refunds claimed by Stargell in her 143 fraudulent returns as well as any potential refunds for the non-fraudulent returns filed by the persons named in Stargell's returns, conceivably requiring the IRS to pay a refund twice.