# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued April 12, 2005         Decided June 10, 2005

No. 04-3067

UNITED STATES OF AMERICA,
APPELLEE

v.

WILLIE LAWSON,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 03cr00282-01)

*Amar D. Sarwal*, appointed by the court, argued the cause and filed the briefs for appellant.

*Brendan J. Crimmins*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were *Kenneth L. Wainstein*, U.S. Attorney, *John R. Fisher*, *Roy W. McLeese, III*, and *Frederick W. Yette*.

Before: RANDOLPH, GARLAND, and ROBERTS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* ROBERTS.

ROBERTS, *Circuit Judge*: Willie Lawson appeals from several rulings by the district court admitting evidence against him in a bank robbery case. Two of the rulings relate to out-of-court identifications — one by a bank teller who selected Lawson from a photographic array, the other by a drug store employee who selected one of the robbers from bank surveillance photographs as the purchaser of items from the drug store that were used during the robbery. The district court also denied Lawson's motion to suppress physical evidence seized from a car he had loaned to his brother, and allowed the government to present evidence of a second, uncharged bank robbery, for the purpose of establishing Lawson's identity as one of the robbers in the charged crime. We affirm.

**I.**

On April 5, 2002, two unmasked men robbed a Riggs Bank in southeast Washington, D.C. The smaller of the two men approached one of the tellers and instructed her to open a door leading to the area behind the teller stalls.[1] The other robber, taller and heavier in build, approached the bank manager and pressed to his head a black handgun with a silver hammer, likewise instructing him to open the teller door. The bank manager would later identify the taller individual as Gregory Smith, a man who had been to the bank on a prior occasion, ostensibly to open an account. Trial Tr., Dec. 9, 2003, at 37–38, 120.

Once the teller door was opened, the smaller man collected the contents of the tellers' drawers in a white, plastic bag, while the taller man stood guard in the lobby, his gun trained on the employees and customers. The two men then fled, taking with

---

[1] Witnesses would offer conflicting testimony as to whether this man was armed. *Compare* Trial Tr., Dec. 9, 2003, at 12, 22–23, 27 *with id.* at 70, 89.

them over twenty thousand dollars in cash and securities. They did not, however, get very far with their loot — concealed within the bundles of cash were packets of red dye that exploded outside the bank, causing the robbers to abandon the plastic bag and its contents.

FBI agents recovered the plastic bag outside the bank, and discovered that it was a Rite Aid pharmacy bag. Inside the bag they found, along with the stained cash and securities, a receipt from a Rite Aid pharmacy for a box of latex gloves and a Spartan-brand stretch cap. Both men had worn such gloves during the robbery, and bank surveillance photographs confirmed that the taller robber had worn a stretch cap. *See id.* at 41–42; Gov't Trial Ex. 11.

The following day, a tall and a shorter man robbed a SunTrust Bank in Rockville, Maryland. Unlike the Riggs robbery, the SunTrust robbers wore masks, and the shorter robber wore dark sweat pants with a broad stripe down the sides. As in the Riggs robbery, however, the taller man wielded a silver-hammered gun, and the shorter man collected money from behind the teller stalls. In addition, the taller man appeared to be wearing the same clothes as the taller Riggs Bank robber. *See* Trial Tr., Dec. 11, 2003, at 82–86; Gov't Trial Exs. 35–36.

On April 8, 2002, FBI agents arrested Willie Lawson pursuant to a warrant issued for a Bank of America robbery in Virginia. Lawson was apprehended in his car, outside his girlfriend's apartment, and he and his girlfriend consented to searches of the car and apartment. In Lawson's car agents found black sweat pants with a broad red stripe, as well as credit and identification cards belonging to Gregory Smith. In the apartment agents found a stretch cap and a semi-automatic pistol with a silver hammer.

Lawson also directed FBI agents to the apartment of his brother, Joseph, where Willie Lawson kept some personal property. Outside that apartment agents noticed a gray Oldsmobile that matched a description of the getaway vehicle in the Bank of America robbery, with temporary tags matching four out of five numbers from a license plate identification from that robbery. Motions Hr'g Tr., Nov. 18, 2003, at 30.[2] When asked about the car, Joseph Lawson told the agents that it belonged to the mother of Willie Lawson's child, and that Willie had loaned it to him two weeks prior to the agents' arrival.

The agents informed Joseph Lawson that they needed to seize the Oldsmobile, and Joseph handed them the keys. A subsequent search of the car revealed a pair of latex gloves and packaging for a Spartan-brand cap bearing Willie Lawson's fingerprints.

Within a week of the Riggs robbery, FBI agent Michael MacLean interviewed the Rite Aid employee who had presided over the sale memorialized on the receipt found at the scene of the crime. The employee recalled the transaction and described the purchaser as a black male in his twenties. Agent MacLean then showed the employee surveillance photos from the Riggs robbery, and the employee identified the smaller of the two robbers as the person with whom she had conducted the transaction. The surveillance photo of the smaller man showed only the back and side of his head. *See* Motions Hr'g Tr., Nov. 17, 2003, at 78–79; Gov't Trial Ex. 8.

Several weeks later, agent MacLean interviewed a teller who had been present during the Riggs robbery. The teller indicated she had observed the smaller perpetrator at close range

---

[2] Despite these similarities, authorities ultimately determined that the Oldsmobile was not the vehicle involved in the Bank of America robbery. Motions Hr'g Tr., Nov. 18, 2003, at 30.

for twenty to thirty seconds and could identify him. *See* Motions Hr'g Tr., Nov. 17, 2003, at 70–71. Agent MacLean then produced a previously-prepared photographic lineup of six individuals, and the teller immediately selected Willie Lawson's photograph. According to MacLean, "[s]he was very sure of herself and very sure of the identification." Motions Hr'g Tr., Nov. 18, 2003, at 28.

Willie Lawson and Gregory Smith were indicted for the Riggs robbery under 18 U.S.C. §§ 2, 2113(a) & (d) (aggravated bank robbery and aiding and abetting) and 18 U.S.C. §§ 2, 924(c)(1)(A)(ii) (brandishing a firearm during a crime of violence and aiding and abetting). Because Smith had not been apprehended, Lawson faced the prosecution alone.

Prior to trial, Lawson filed motions to exclude the identifications by the bank teller and the Rite Aid employee and to suppress the evidence obtained from the search of the gray Oldsmobile. Lawson also opposed the government's notice of intent to offer evidence of the uncharged SunTrust robbery.

The district court rejected Lawson's pleadings. With respect to the motion to suppress, the court held that Lawson did not have a reasonable expectation of privacy in the Oldsmobile, and thus could not contest its search. Motions Hr'g Tr., Nov. 18, 2003, at 111–13. The court found the SunTrust evidence admissible as probative of identity in the Riggs robbery, and held that the introduction of such evidence would not unduly prejudice Lawson. Dec. 3, 2003 Order at 5–6. Finally, the court admitted both identifications, reasoning that the photographic array shown to the bank teller was not unduly suggestive and that the drug store employee's account was relevant and sufficiently reliable. Trial Tr., Dec. 8, 2003, at 14–15.

At trial, Lawson was represented by counsel during the government's case-in-chief, but elected to waive his right to

counsel and presented the defense case himself. The jury convicted him on both counts and he now appeals.

## II.

Before us, Lawson — once again represented by counsel — reiterates the arguments raised before the district court. He maintains that the Riggs Bank and Rite Aid identifications are inadmissible, that the search of the Oldsmobile violated his Fourth Amendment rights, and that the government should not have been permitted to introduce evidence of the SunTrust robbery. We examine these contentions in turn.

**A.** A two-part inquiry governs the admissibility of out-of-court identifications. We first determine whether the identification procedure was impermissibly suggestive. *United States v. Antoine Washington*, 12 F.3d 1128, 1134 (D.C. Cir. 1994) (citing *Neil v. Biggers*, 409 U.S. 188, 197 (1972)). If it was, we then ask, in light of the totality of the circumstances, whether "the identification was sufficiently reliable to preclude a substantial likelihood of misidentification." *Id.* (citing *Manson v. Brathwaite*, 432 U.S. 98, 113–16 (1977)).[3]

In evaluating the bank teller's identification, we need not proceed beyond the first step of the inquiry. The photographic array shown to the teller was not the least bit suggestive. The array depicts six African-American individuals of generally similar ages and facial features. *See* Def. Motion Hr'g Ex. 19. While Lawson contends that his complexion is lighter than that of the others, and that his lips and chin are more prominent, in

---

[3] If an out-of-court identification is held inadmissible, any subsequent in-court identification by the same witness will also be barred, unless the prosecution can show an independent, untainted source for the in-court identification. *United States v. Wade*, 388 U.S. 218, 241 (1967).

each respect at least one other pictured individual appears comparable. Moreover, agent MacLean gave the teller a standard admonishment in advance of showing her the array, including a warning that "photographs may not always depict the true complexion of a person" and that such complexion "may be lighter or darker than shown in the photo." Gov't Trial Ex. 42; *see* Motions Hr'g Tr., Nov. 17, 2003, at 72–73.

We also note that, were we to reach the reliability prong of the test, the teller's identification would easily pass muster. Although the identification took place several weeks after the robbery, the teller indicated that she could identify the smaller robber — having observed him at close range and for a considerable period of time — and she showed no hesitation in picking Lawson from the array. *See* Motions Hr'g Tr., Nov. 17, 2003, at 70–71.

The Rite Aid identification presents a closer question, in that the employee was shown surveillance photographs — an arguably suggestive medium — and the photographs only depict the two individuals who had robbed the bank. Further, the employee purported to identify a customer she had seen face to face — across a sales counter — as the same individual appearing in a photograph showing only the side and the back of a person's head.

We need not determine whether the admission of the Rite Aid identification was error, however, because any such error would have been harmless "beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24 (1967). First, the government adduced ample evidence of guilt. In particular, the government introduced the bank teller's identification of Lawson as the smaller robber; the distinctive silver-hammered gun, resembling the item used by the taller robber, found in the apartment of Lawson's girlfriend; credit and identification cards belonging to Gregory Smith found in Lawson's car; striped

sweat pants matching those worn by the smaller robber in the subsequent SunTrust robbery, also found in Lawson's car; and the Rite Aid receipt found at the scene of the crime and items matching that purchase found in the apartment of Lawson's girlfriend and in the gray Oldsmobile Lawson had loaned to his brother.

Second, the probative value of the Rite Aid identification was minimal. In the interview with agent MacLean, the Rite Aid employee did no more than indicate which of the robbers had purchased the items. She failed to follow up her out-of-court linking of the surveillance photograph to the Rite Aid purchaser with an in-court identification of Lawson as either the purchaser or the smaller robber. *See* Trial Tr., Dec. 9, 2003, at 110–11. Under such circumstances, we can say with confidence that the out-of-court identification did not contribute to the jury's verdict. *See United States v. Jerome Washington*, 353 F.3d 42, 45–46 (D.C. Cir. 2004) (identification held harmless where "there was abundant evidence of [defendant's] guilt" and "the potential impact on the jury of [the] identification was slight").

**B.** Lawson next challenges the admission of evidence seized from the gray Oldsmobile. As noted above, the district court dismissed his challenge on the ground that Lawson did not have a reasonable expectation of privacy, holding that Lawson effectively gave up any such expectation when he loaned the car to his brother two weeks before the search. We affirm on a different ground — that the search of the Oldsmobile was supported by probable cause.[4]

---

[4] Although the government did not argue probable cause before the district court, we may affirm on grounds other than those presented and relied on below. *United States v. Garrett*, 720 F.2d 705, 710 (D.C. Cir. 1983). Moreover, although courts sometimes refer to the reasonable expectation of privacy issue as "standing" to contest a

Authorities may conduct a warrantless search of a motor vehicle if they have probable cause to believe it contains contraband or evidence of a crime. *See, e.g.*, *California v. Acevedo*, 500 U.S. 565, 569–70 (1991); *United States v. Wider*, 951 F.2d 1283, 1286 (D.C. Cir. 1991). If authorities have probable cause, they may either conduct an immediate search or remove the vehicle to a police station and search it at some later time. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970).

Here FBI agents were justified in seizing the Oldsmobile and in conducting the subsequent search. The vehicle matched a physical description of the getaway car in the Bank of America robbery — the crime for which Willie Lawson initially had been arrested. Four out of five numbers on the temporary license plate matched a witness account of the getaway car's tags. Motions Hr'g Tr., Nov. 18, 2003, at 30. Further, prior to seizing the car, agents "saw some latex gloves laying in the right front passenger area." Motions Hr'g Tr., Nov. 17, 2003, at 98. In light of these circumstances, it was reasonable for agents to believe the vehicle contained contraband or instrumentalities of crime.

**C.** Finally, Lawson argues the district court erred in permitting the government to present evidence of the uncharged SunTrust robbery. That evidence was admitted to help prove identity — if the jury concluded that Lawson participated in the SunTrust robbery, and that the SunTrust and Riggs robberies were similar, it could infer that Lawson also participated in the Riggs robbery. *See* Trial Tr., Dec. 15, 2003, at 70–71 (jury instruction). Lawson further argues that even if the evidence

---

search, the question "is more properly placed within the purview of substantive Fourth Amendment law than within that of standing," *Minnesota v. Carter*, 525 U.S. 83, 88 (1988) (citation omitted), and thus we need not resolve it prior to addressing probable cause.

was admissible for this purpose, the district court should have excluded it as unfairly prejudicial.

Federal Rule of Evidence 404(b), which governs the admission of evidence of other crimes or bad acts, "is a rule of inclusion rather than exclusion." *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000). The rule bars admission of such evidence when offered for the purpose of proving that a defendant acted in conformity with his character, but allows admission so long as the evidence is offered for any other relevant purpose. *Id.* at 930. If a court finds that evidence of other crimes is admissible under Rule 404(b), it must then decide whether the probative value of the evidence "is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. We accord substantial deference to the district court's rulings on these issues. *See United States v. Pindell*, 336 F.3d 1049, 1056–57 (D.C. Cir. 2003) (404(b) rulings reviewed for abuse of discretion); *United States v. Cassell*, 292 F.3d 788, 796 (D.C. Cir. 2002) (403 rulings reviewed for "grave abuse").

There was no abuse of discretion here. Rule 404(b) specifically lists "identity" as one of the purposes for which evidence of "other crimes, wrongs, or acts" may be admissible. *See United States v. Carr*, 373 F.3d 1350, 1352–53 (D.C. Cir. 2004). Contrary to Lawson's suggestion, the SunTrust and Riggs robberies shared sufficient characteristics to permit an inference of identity. Both were executed by a taller man wielding a distinctive silver-hammered handgun and a shorter man who collected money from the tellers, and the taller individual appeared to wear the same clothes during both crimes. Moreover, the SunTrust evidence was relevant to the Riggs robbery — if the jury believed, based on the evidence seized (including the striped sweat pants resembling those worn by the smaller robber in the SunTrust crime) that Lawson had committed the SunTrust robbery, the similarities between the offenses

made it more likely that he was one of the Riggs Bank robbers as well.

Nor did the district court gravely abuse its discretion in concluding that the probative value of the SunTrust robbery evidence was not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The SunTrust evidence was probative on the central issue in the case — the identity of the smaller Riggs Bank robber. As for unfair prejudice, the district court noted that the details of the SunTrust robbery "add no emotional or other pejorative emphasis not already introduced by the evidence of the Riggs robbery." Dec. 3, 2003 Order at 6.

The judgment of the district court is affirmed.