NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 09-3896 & 09-3981
_____

UNITED STATES OF AMERICA

v.

TRAMELL BLEDSOE,
                    Appellant  (No. 09-3896)

PHILIP SAINSBURY
                    Appellant  (No. 09-3981)


_____


On Appeal from the United States District Court
For the Eastern District of Pennsylvania
(D.C. Criminal Action Nos. 2-07-cr-00165-001/2)
District Judge:  Honorable Lawrence F. Stengel
_____

Submitted Under Third Circuit LAR 34.1(a)
September 22, 2011
_____

Before:  AMBRO, CHAGARES, and GARTH, Circuit Judges

(Opinion filed: November 2, 2011)
_____

OPINION
_____


AMBRO, Circuit Judge

A federal jury convicted Tramell Bledsoe and Philip Sainsbury of armed bank robbery and related crimes. They appeal, arguing that the District Court admitted inadmissible evidence and that the evidence against them was insufficient. Because we agree with the District Court's rulings and believe that the evidence was sufficient, we affirm.

## I.     Background

This case arises out of two bank robberies. The first robbery occurred in December 2005 at the First Commonwealth Federal Credit Union in Palmer Township, Pennsylvania. Employees identified the robbers as two African American men, one much taller than the other but both wearing masks and armed with handguns. As the robbery concluded, the taller man told the shorter robber "Hurry up, Moses." The men escaped into a waiting Jeep and fled the scene. A witness took down its license number so that, while police did not apprehend the suspects, they were able to find the Jeep's owner, Jamie Cooper.

The ensuing investigation linked appellants Bledsoe and Sainsbury to the Credit Union robbery. Cooper stated that he had loaned his Jeep to his friend "Moses" and told officers that Moses had returned the Jeep shortly after the time given for the robbery. With Cooper's cooperation, police identified the phone number that Moses had used to speak with Cooper about the Jeep. That phone belonged to Sainsbury's sister-in-law. Cooper also showed police where Moses lived. Police procured warrants for that home and for the Jeep. Searches under those warrants turned up a stocking mask with Bledsoe's DNA on it and letters in which Sainsbury referred to himself as "Moses."

2

The second robbery occurred in December 2006 at the Lafayette Ambassador Bank in Emmaus, Pennsylvania. Employees identified the robbers as two African American men, one much taller than the other, wearing masks and armed with handguns. As the robbery concluded, the taller man told the shorter one "Hurry up, hurry up." The men escaped into a waiting Audi and fled the scene.

Just after the robbery, Emmaus police officer Jeremy Schilling, who was not aware of the robbery, saw the Audi roll through a stop sign. He also observed that one of the three African American men in the car saw him, then looked away nervously. Schilling followed the Audi long enough to run its license number through his computer. According to the computer, the license plate had been registered to a Lexus but was expired. Schilling then sought to pull the Audi over. The driver parked in a residential driveway and got out of the car, walking toward the house. Schilling ordered the driver to return to the car, which he did.

As Schilling approached the Audi, Bledsoe got out of the back seat and ran. Schilling chased Bledsoe through the residential neighborhood and nearby auto dealerships. Schilling announced his foot chase over the police radio at about the same time that news of the robbery, which had taken place nearby, came over the radio. Other officers responded, caught, and arrested Bledsoe. They found rolls of cash on him and a sweatshirt matching the bank robber's sweatshirt in a shed where Bledsoe had briefly hidden from Schilling.

Police could not find Sainsbury or the Audi's driver after returning to the site of the traffic stop. However, they recovered a glove there later determined to have

3

Sainsbury's DNA in it. They also found that the Audi was registered to Sainsbury's sister-in-law. Sainsbury was further linked to the second robbery as a result of calls that Bledsoe made from prison. Bledsoe frequently called Joshua Burton, another accomplice who was then at liberty (but later pled guilty), asking him to negotiate with "Wet Boy" about splitting proceeds from the robbery. During those calls, Bledsoe told Burton when "Wet Boy" was and was not in prison with him. Sainsbury was in that prison on other charges during the same periods as "Wet Boy."

With respect to both robberies, a federal grand jury charged Bledsoe and Sainsbury with conspiracy to commit armed bank robbery, armed bank robbery, and using and carrying a firearm during a violent crime. The grand jury also charged Bledsoe with possession of a firearm by a convicted felon. Both defendants elected to proceed to trial. After nearly three weeks of trial, the jury convicted Bledsoe and Sainsbury on all charges.

## II. Discussion

The District Court had jurisdiction under 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291.

Taken together, appellants claim that the District Court erred on five grounds: first, by denying a motion for acquittal based on insufficiency of the evidence; second, by admitting letters in which Sainsbury referred to himself as "Moses;" third, by admitting records that Sainsbury was in prison at certain times and was thus more likely to be "Wet Boy;" fourth, by denying a motion for mistrial after a witness said that he had met

4

Sainsbury at "the probation office;" and fifth, by admitting evidence seized at the site of the traffic stop and along Bledsoe's path of flight. We consider each claim in turn.

A.     *Sufficiency of the Evidence*

We must affirm the jury's verdict so long as "there is substantial evidence that, when viewed in the light most favorable to the government, would allow a rational trier of fact to convict." *United States v. Lee*, 612 F.3d 170, 178 (3d Cir. 2010) (quotations and citations omitted). Challenges for insufficiency of evidence thus "place[] a very heavy burden on an appellant." *United States v. Dent*, 149 F.3d 180, 187 (3d Cir. 1998) (quotations and citations omitted). Our review of this question is plenary. *Lee*, 612 F.3d at 178.

Bledsoe, who alone challenges the sufficiency of the evidence against him, has not carried this heavy burden. The two bank robberies were undertaken in a similar fashion at a similar time of year. Bledsoe's physical profile matches that of the taller robber seen on both bank videos holding a handgun. DNA evidence linked Bledsoe to articles of clothing used in both robberies. He was arrested after fleeing a traffic stop of the car in which the Emmaus bank robbers escaped in the vicinity of, and shortly after, the robbery. Bledsoe's calls from prison allude to his part in that robbery. A jury easily could have convicted Bledsoe based on this evidence.

Bledsoe's claims to the contrary are unavailing. It is not necessary that bank employees positively identify a defendant as the bank robber, nor that the Government use fingerprint evidence. Bledsoe does not support his assertion that the Government failed to establish a chain of custody over the DNA evidence. And, in our view, the

5

Government more than adequately proved that the man who fled the Audi was the same man whom police subsequently arrested. For these reasons, we affirm the District Court's denial of Bledsoe's motion for a judgment of acquittal.

B.      *Letters*

As soon as police learned from the owner of the Jeep used in the first robbery where his friend "Moses" lived, they applied for a search warrant. That warrant authorized the police to search for and to seize United States currency and money wrappers, among other evidence. Some twelve hours after the robbery, police executed the warrant in Sainsbury's home. There, they found letters in which Sainsbury referred to himself as "Moses." Sainsbury moved the District Court to exclude the letters as beyond the scope of the search warrant. It denied his motion.

We review denials of a motion to suppress "for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *United States v. Perez*, 280 F.3d 318, 336 (3d Cir. 2002). During an otherwise lawful search, police may seize items that are in "plain view" even if the warrant does not list those items. This rule applies if three requirements are met: "First, the officer must not have violated the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed. Second, the incriminating character of the evidence must be immediately apparent. Third, the officer must have a lawful right of access to the object itself." *United States v. Stabile*, 633 F.3d 219, 241 (3d Cir. 2011) (internal quotation marks and citation omitted).

6

The plain view exception covers the letters whose admission Sainsbury challenges. The warrant authorized the executing officers to search anywhere in Sainsbury's home where they might find cash and money wrappers, which includes places where they might find letters. And the officer testified that he seized the letters because he noticed the word "Moses" on them. Sainsbury challenges none of this. Rather, he recites the general rule that objects seized must be described in the warrant, ignoring the District Court's ruling that the plain view exception applies. We therefore affirm the District Court's denial of Sainsbury's motion to suppress the letters.

### C.    *Prison Records*

The Government introduced records that Sainsbury was incarcerated at the Lehigh County Prison during certain dates on unrelated charges. Bledsoe had made recorded calls from prison revealing that "Wet Boy" accompanied him in the Emmaus robbery and that "Wet Boy" was in the prison with him during certain times. The Government sought to establish that Sainsbury was "Wet Boy" by showing that he was in prison at those times. Sainsbury objected that the evidence was substantially more prejudicial than probative, thereby violating Federal Rule of Evidence 403. The District Court denied his objection.

We review a district court's decision to admit or exclude evidence for abuse of discretion. *Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 297 (3d Cir. 2007). In the context of Rule 403, our review is especially deferential. "In order to justify reversal, a district court's analysis and resulting conclusion must be 'arbitrary or irrational.'" *United States*

*v. Univ. Rehab. Serv's, Inc.*, 205 F.3d 657, 665 (3d Cir. 2000) (*en banc*) (footnote and citation omitted).

The District Court did not abuse its discretion in admitting the prison records. Evidence showing that a defendant had been convicted of other crimes is prejudicial. However, Rule 403 anticipates that some evidence will be prejudicial. The question is whether that prejudice "substantially outweighs" its probative value. In this case, there was considerable probative value in identifying Sainsbury as "Wet Boy" insofar as it linked him to the Emmaus robbery. *Cf. United States v. Lawson*, 410 F.3d 735, 741-42 (D.C. Cir. 2005) (Roberts, J.) (upholding admission of evidence of uncharged bank robbery to establish defendant's identity). Furthermore, the District Court instructed the jury that it was to consider the records only for the purpose of identifying Sainsbury. As the District Court gave the jury a limiting instruction and its balancing under Rule 403 was not 'arbitrary or irrational,' we affirm its ruling.

D.      *"The Probation Office"*

On direct examination, a police officer testifying about DNA evidence noted that he met Sainsbury to take his blood sample "at the probation office in Allentown." Sainsbury immediately moved for a mistrial on the ground that the statement, which suggested that Sainsbury may have a criminal record, was prejudicial. The District Court denied the motion but told the jury to disregard the remark.

"We review the denial of a motion for a mistrial based on a witness's allegedly prejudicial comments for an abuse of discretion. Three factors must be analyzed to determine whether the defendant was prejudiced: (1) whether [the witness's] remarks

8

were pronounced and persistent . . . ; (2) the strength of the other evidence; and (3) curative action taken by the district court." *United States v. Riley*, 621 F.3d 312, 335-36 (3d Cir. 2010) (internal quotation marks omitted) (citing and quoting *United States v. Lore*, 430 F.3d 190, 207 (3d Cir. 2005)).

Each of these three factors supports the District Court's ruling. As in *Lore*, a single statement in the course of a three-week trial "hardly can be deemed 'pronounced and persistent.'" 430 F.3d at 207. The evidence against Sainsbury was substantial; a jury presented with DNA evidence, phone records, and eyewitness testimony need not have considered that Sainsbury might have been on probation. And the District Court issued a curative instruction immediately, well within the thirty minutes after the prejudicial remark that we have held to be sufficient. *See United States v. Hakim*, 344 F.3d 324, 329-30 (3d Cir. 2003). Thus, we affirm the District Court's denial of appellants' motion for a mistrial.

### E.     *Evidence from Traffic Stop*

Lastly, Bledsoe challenges the District Court's decision to admit the physical evidence stemming from his arrest after the Emmaus robbery. He contends that because Officer Schilling lacked reasonable suspicion to "stop" him, his arrest was illegal, rendering all of the evidence flowing from it "fruit of the poisonous tree."

We review denials of a motion to suppress "for clear error as to the underlying factual findings and exercise[] plenary review of the District Court's application of the law to those facts." *Perez*, 280 F.3d at 336.

9

Each step of Bledsoe's arrest was legal. It began with Schilling's stop of the Audi, which he observed roll through a stop sign and whose license plate was registered to a different make of car. A police officer who observes a violation of state traffic laws may stop the car committing the violation. *Pennsylvania v. Mimms*, 434 U.S. 106, 109 (1977). Bledsoe does not challenge that the Audi's driver violated a traffic law. Once an officer has stopped a car, he or she may order its passengers out of the car without any further justification. *Maryland v. Wilson*, 519 U.S. 408, 414-15 (1997).

Schilling's chase and arrest after Bledsoe got out of the car is justified by the doctrine of *Terry v. Ohio*, 392 U.S. 1 (1968). Officers may "stop" a person if they have "a reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Bledsoe is correct that merely running from an officer does not give rise to "reasonable, articulable suspicion." *Id.* at 124-25. However, such flight combined with other indicia of wrongdoing may satisfy that standard. *Id.* We found such indicia in a case that is identical in all relevant respects to this one. *United States v. Bonner*, 363 F.3d 213 (3d Cir. 2004). There, an officer made a routine traffic stop. As he approached the driver's door, a passenger got out of the car and ran, ignoring the officer's demands to stop. *Id.* at 215. We concluded that "[f]light from a non-consensual, legitimate traffic stop . . . gives rise to reasonable suspicion" under the *Terry*/*Wardlow* standard. *Id.* at 218.

Once Schilling's colleague "stopped" Bledsoe and found thousands of dollars in Lafayette Ambassador Bank wrappers, he had the requisite cause to arrest Bledsoe. The officer joined Schilling's pursuit on hearing over the police radio (i) that the Lafayette

10

Ambassador Bank had just been robbed and (ii) that Schilling was chasing someone on foot near the bank. This background, including the money that the officer found when patting Bledsoe down, establishes probable cause. "'[P]robable cause to arrest exists when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested.'" *Reedy v. Evanson*, 615 F.3d 197, 211 (3d Cir. 2010) (quoting *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995)).

Police at no point violated Bledsoe's Fourth Amendment rights. We thus agree with the District Court that the physical evidence seized from him and along the path of his attempted escape is admissible.

\* \* \*

For the foregoing reasons, we hold that none of the District Court's challenged rulings constitutes reversible error. Accordingly, we affirm.[1]

---

[1] In a Rule 28(j) letter, Sainsbury urges that we permit supplemental briefing on the effect that *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), has on this case. We fail to see the relevance of *Bullcoming*, which concerns the definition of testimonial evidence under the Confrontation Clause.

11