UNITED STATES of America, Plaintiff–Appellee,

v.

Harvey HUGS, Defendant–Appellant.

No. 02–30390.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 8, 2003.

Filed Sept. 13, 2004.

Robin B. Hammond, Federal Defenders of Montana, Billings, MT, for the defendant-appellant.

Klaus P. Richter, Office of the United States Attorney, Billings, MT, for the plaintiff-appellee.

Before BROWNING, ALARCÓN, and CLIFTON, Circuit Judges.

ALARCÓN, Senior Circuit Judge:

Harvey Hugs appeals from the judgment entered following his conviction by a jury of involuntary manslaughter in violation of 18 U.S.C. §§ 1153 and 1112. Mr. Hugs was charged with and found guilty of involuntarily killing Theron Old Elk on April 10, 2001. Mr. Hugs contends that the court's instructions to the jury altered the charges brought against him by the grand jury and thus violated his Fifth Amendment rights. He also contends that a condition of his supervised release, which requires that he provide the Government a DNA sample, is unconstitutionally vague and improper. We affirm Mr. Hugs's conviction because we conclude that the erroneous jury instructions did not affect Mr. Hugs's substantial rights under the plain error rule. We also affirm the special condition of Mr. Hugs's supervised release because we conclude that requiring Mr. Hugs to provide a DNA sample is a minimal intrusion into his right to privacy.

I

At approximately 3:15 p.m. on April 10, 2001, Harvey Hugs, an Indian, was involved in a single vehicle automobile accident inside the Crow Indian Reservation, in which Theron Old Elk died. Though there was no witness of the actual crash, the police investigation and accident reconstruction concluded that Mr. Hugs was the driver. Mr. Hugs had also been seen drinking and intoxicated on separate occasions throughout the day, both before and after the accident. After Mr. Hugs was admitted to the hospital on April 10, 2001, a blood sample was tested twice to determine Mr. Hugs's blood alcohol content. A test performed at the hospital that day showed Mr. Hugs's blood alcohol level to be .28. The FBI test, performed on April

24, 2001, disclosed a blood alcohol level of .24.

## II

On December 21, 2001, Mr. Hugs was indicted by a grand jury. The indictment reads as follows:

That on or about April 10, 2001, near Fort Smith, in the State and District of Montana and within the exterior boundaries of the Crow Indian Reservation, being Indian country, the appellant, HARVEY A. HUGS, an Indian person, unlawfully killed Theron Old Elk without malice, in the commission of an unlawful act not amounting to a felony, that is, operating a motor vehicle while under the influence of alcohol, in violation of Title 18 U.S.C. §§ 1153(a) and 1112.

Mr. Hugs entered a plea of not guilty on January 16, 2002. On that date, the court ordered the parties to submit one set of "jointly agreed-upon instructions." On June 19, 2002, the parties jointly proposed instruction No. 6. Joint Jury Instruction No. 6 reads as follows:

The defendant is charged in the indictment with involuntary manslaughter in violation of Section 1112 of Title 18 of the United States Code. In order for the defendant to be found guilty of that charge, the Government must prove each of the following elements beyond a reasonable doubt:

First, the defendant is an Indian person;

Second, that the offense charged in the Indictment took place within the exterior boundaries of the Crow Indian Reservation;

Third, the defendant committed an unlawful act not amounting to a felony, or committed a lawful act, done either in an unlawful manner, or with wanton or reckless disregard for human life, which might produce death;

Fourth, the defendant's act was the proximate cause of the death of the victim. A proximate cause is one which played a substantial part in bringing about death, so that the death was the direct result or a reasonably probable consequence of the defendant's act;

Fifth, the killing was unlawful;

Sixth, the defendant either knew or should have known that such conduct was a threat to the lives of others or knew of circumstances that would reasonably cause the defendant to foresee that such conduct might be a threat to the lives of others.

After several continuances, trial commenced on June 24, 2002. At the beginning of the jury selection proceedings, the court directed the prosecutor to read the indictment to the prospective jurors.

After the jurors were selected and sworn, the court informed the jurors that it would read a brief summary of the elements of the crime to help them follow the evidence. The court cautioned the jury that "[t]hese instructions are preliminary, and the instructions I will give at the end of the case will control."

The court then read the elements of the crime of involuntary manslaughter as set forth in Joint Jury Instruction No. 6. The court admonished the jury as follows:

First, that the defendant is an Indian person; second, that the offense charged in the indictment took place within the exterior boundaries of the Crow Indian Reservation; third, that the defendant committed an unlawful [sic] not amounting to a felony, or committed a lawful act done either in an unlawful manner or with wanton or with reckless disregard to human life which might produce death; fourth that the defendant's act

was the proximate cause of the death of the victim.

Defense counsel did not object to the reading of this portion of Joint Instruction No. 6.

During his opening statement to the jury, the prosecutor stated that "[t]he indictment has been read, and the court told you that's involuntary manslaughter." In paraphrasing the elements of the alleged crime presented to the jury in the court's preliminary instruction, the prosecutor stated that the Government must prove that "the appellant committed an unlawful act not amounting to a felony, or there's some alternatives, too...." The prosecutor did not describe the "alternatives" in his opening statement. Defense counsel did not object to the prosecutor's statement of the elements of involuntary manslaughter.

After both sides had rested, the court read Instruction No. 14 to the jury. Instruction No. 14 contains the complete text of Joint Instruction No. 6. The jury was also given Instruction No. 9. It reads as follows:

> It is charged in the Indictment: That on or about April 10, 2001, near Fort Smith, in the State and District of Montana, and within the exterior boundaries of the Crow Indian reservation, being Indian Country, the Defendant, HARVEY A. HUGS, an Indian person, unlawfully killed Theron Old Elk without malice, in the commission of an unlawful act not amounting to a felony, that is operating a motor vehicle while under the influence of alcohol, in violation of Title 18 U.S.C. §§ 1153(a) and 1112.

The court also read the text of § 1112, as set forth in Instruction No. 13:

> [Involuntary] Manslaughter is the unlawful killing of a human being without malice ... [i]n the commission of an unlawful act not amounting to a felony,

or in the commission in an unlawful manner or without due caution or circumspection of an unlawful act which might produce death ... [w]ithin the special maritime and territorial jurisdiction of the United States.

In Instruction No. 17, the jury was admonished as follows:

> You are here only to determine whether the defendant is guilty or not guilty of the charge in the indictment. Your determination must be made only from the evidence in the case. *The defendant is not on trial for any conduct or offense not charged in the indictment.*

(emphasis added).

The jury returned a guilty verdict on June 25, 2002. The court sentenced Mr. Hugs to a 27–month term of imprisonment, to be followed by 3 years of supervised release.

### III

Mr. Hugs contends that the jury instructions read by the district court allowed the petit jury to convict him of charges that are not contained in the indictment. Mr. Hugs argues that under the court's instructions, the jury was permitted to convict him if he committed either an unlawful act, a lawful act done unlawfully, or a lawful act done with reckless or wanton disregard for human life. As noted above, the indictment solely alleges that Mr. Hugs committed an unlawful act not amounting to a felony.

 We review a variance or constructive amendment to an indictment that is not objected to at trial for plain error. *United States v. Choy,* 309 F.3d 602, 607 (9th Cir.2002). The Government contends that because Mr. Hugs jointly submitted the instruction he is contesting, he waived his right to challenge it. Under the "invit-

ed error" doctrine, appellate review is barred if the appellant waived his or her right to challenge an erroneous jury instruction on appeal. *United States v. Burt*, 143 F.3d 1215, 1217 (9th Cir.1998). "A defendant's right to challenge a jury instruction is waived if the defendant considered the controlling law and in spite of being aware of the applicable law, proposed or accepted a flawed instruction." *Id.* (quotation marks and citation omitted).

■ Mr. Hugs asserts that his attorney was unaware at the time Joint Instruction No. 6 was submitted to the court that it varied from the allegations in the indictment. The record does not show that defense counsel was aware that the jury instruction might be erroneous because it set forth discrete forms of involuntary manslaughter not alleged in the indictment. Thus, the Government has not demonstrated that Mr. Hugs waived his right to a review of his claim of variance or constructive amendment under the plain error doctrine.

■ Under Rule 52(b) of the Federal Rules of Criminal Procedure, we may reverse a conviction if there exists "(1) [an] error, (2) that is plain and (3) that affects substantial rights." *United States v. Uchimura*, 125 F.3d 1282, 1287(9th Cir. 1997). "If these three elements are present, we have discretion to correct an error under Rule 52(b) 'if the error seriously affects the fairness, integrity or public reputation of the judicial proceedings.'" *Burt*, 143 F.3d at 1218(quoting *United States v. Olano*, 507 U.S. 725, 736, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993)). "The right to have the grand jury make the charge on its own judgment is a substantial right which cannot be taken away with or without court amendment." *Stirone v. United States*, 361 U.S. 212, 218–19, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). "It is plain error for a district court to give instructions that

permit the jury to convict the defendant for a crime that was not charged, because the court may not substantially amend the indictment through its instructions to the jury." *United States v. Vowiell*, 869 F.2d 1264, 1271(9th Cir.1989) (quotation marks and citation omitted).

We have held that a defendant is not denied his or her right to a grand jury when the jury instructions and proof at trial diverge insignificantly from the indictment. *United States v. Olson*, 925 F.2d 1170, 1175 (9th Cir.1991). In *Olson*, the district court read a jury instruction stating that the appellant could be convicted if he schemed "to obtain money or property." *Id.* at 1174. The indictment, however, only charged the appellant with scheming "to obtain money." *Id.* Olson argued that the addition of "or property" in the jury instruction constructively amended the indictment. *Id.* We concluded that the instruction did not constructively amend the indictment because the evidence produced at trial addressed only what was charged in the indictment. *Id.* at 1175. Because the indictment provided the appellant fair notice of what the Government eventually proved at trial, the indictment had served its intended functions, and any difference between the indictment and the instruction was merely a "variance," and not an amendment. *Id.* at 1176.

■ At Mr. Hugs's trial, the Government presented evidence that Theron Old Elk's death was caused by Mr. Hugs's unlawful act of driving while intoxicated. Under Montana law, it is a misdemeanor to drive on public roads under the influence of alcohol. It is uncontested that Highway 133 is a public road. Several witnesses testified that, based on his actions and the smell of alcohol on his breath, Mr. Hugs was intoxicated before and after the accident. Many witnesses testified that they saw him drinking

throughout the day. The laboratory test taken at the hospital showed that Mr. Hugs's blood-alcohol concentration was .28. The test performed by the FBI produced a blood-alcohol concentration of .24. Under Montana state law, if a driver has an blood-alcohol concentration of .10 or greater, "it may be inferred that the person was under the influence of alcohol[,]" and thus driving illegally. Mont.Code Ann. § 61–8–401(4)(c) (2002).

The district court should have limited its instructions on the elements of involuntary manslaughter to the crime set forth in the indictment, i.e. the unlawful killing of a person without malice, in the commission of an unlawful act not amounting to a felony. Joint Jury Instruction No. 6 is an exact copy of Ninth Circuit Model Criminal Jury Instruction 8.92. The district court committed plain error in reading this instruction in its entirety because it sets forth the elements of crimes not alleged in the indictment.

Pursuant to the Court's instruction in *Olano*, however, we can reverse only if the record demonstrates that plain error affected a defendant's substantial rights. *See Olano*, 507 U.S. at 734, 113 S.Ct. 1770("It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice. In most cases, a court of appeals cannot correct the forfeited error unless the defendant shows that the error was prejudicial."). Mr. Hugs has not made this showing. The indictment provided Mr. Hugs fair notice of the evidence the Government would produce at trial. The evidence necessary to prove each element contained in the indictment was essentially uncontroverted. The jury was admonished that it could not convict Mr. Hugs of any conduct not charged in the indictment. We are persuaded that the district court's plain error did not affect Mr. Hugs's substantial rights.

## IV

Mr. Hugs further contends that Special Condition No. 4 of his supervised release, requiring him to submit to DNA testing, violates his constitutional rights because the condition is vague and would allow Mr. Hugs's probation officer too much discretion. He argues that Special Condition No. 4 violates his Fifth Amendment due process rights because it is vague and allows his probation officer too much discretion.

■■■■ "A district court's decision to impose a condition of supervised release is . . . reviewed for an abuse of discretion." *United States v. Lakatos*, 241 F.3d 690, 692 (9th Cir.2001). "A district court would necessarily abuse its discretion if it based its ruling on an erroneous view of the law. . . ." *Cooter v. Hartmarx Corp.*, 496 U.S. 384, 405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990). "A statute violates due process of law if it either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application. The same principles apply to a condition of supervised release." *United States v. Loy*, 237 F.3d 251, 262 (3d Cir.2001) (internal citations and quotation marks omitted).

■■■ Condition No. 4 requires Mr. Hugs to "cooperate in the collection of DNA as directed by the U.S. probation officer." The Government maintains that the probation officer's discretion is not excessive because the probation officer and other agents are bound to follow extensive rules and restrictions in collecting and maintaining genetic information. We agree. A federal probation officer is provided with a U.S. model procedure for obtaining a blood sample. *See* 42 U.S.C. § 14135a(e) (2003) (requiring that the col-

lection and use of DNA samples be carried out in accordance with regulations promulgated by the Attorney General, and requiring the Director of the Administrative Office of the United States Courts to make model procedures available to probation officers). Once collected, the sample must be sent directly to the FBI. 42 U.S.C. § 14135a(b). The sample serves to identify the donor, but not any of his or her specific traits. "[T]he national DNA identification index ... is comprised of particular genetic markers—known as 'junk sites'—that are purposely selected because they are not associated with any known genetic trait." *United States v. Reynard,* 220 F.Supp.2d 1142, 1152(S.D.Cal.2002). Federal privacy laws govern any dissemination of the DNA information. 42 U.S.C. § 14135e (2003). No reasonable person would understand Condition No. 4 to mean anything other than that he or she must give a blood sample to the probation officer. The condition is not unconstitutionally vague.

 A condition of supervised release requiring a qualified felon to provide a DNA sample pursuant to the procedures set forth in the DNA Act, 42 U.S.C. § 14135a, does not violate the Fourth Amendment. *United States v. Kincade,* 379 F.3d 813 (9th Cir.2004). Condition No. 4 does not violate Mr. Hugs's Fourth Amendment right to privacy.

**AFFIRMED.**