**UNITED STATES of America,**
**Plaintiff—Appellee,**

v.

**ST. LUKE'S SUBACUTE CARE HOSPITAL, INC.; et al.,**
**Defendants—Appellants.**

**No. 04–10231.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted April 3, 2006.

Decided May 5, 2006.

---

* The Honorable Jeremy D. Fogel, United States District Judge for the Northern District of California, sitting by designation.

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

Amber S. Rosen, Esq., Office of the U.S. Attorney, San Jose, CA, for Plaintiff—Appellee.

Patrick Sarsfield Hallinan, Esq., Kenneth H. Wine, Esq., Hallinan & Wine, Dennis P. Riordan, Esq., Riordan & Horgan, San Francisco, CA, for Defendants—Appellants.

Before: B. FLETCHER, BEEZER, and FISHER, Circuit Judges.

## MEMORANDUM *

Guy Seaton ("Seaton") appeals his conviction and 78–month sentence for six counts stemming from Medicare fraud, and St. Luke's Hospital ("St.Luke's") (together with Seaton, "appellants") appeals its five-year probation. We have jurisdiction under 18 U.S.C. § 1291, and we affirm.

Because the parties are familiar with the facts, we do not recite them in detail. Prior to his indictment in this action, Sea-

---

* This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir. R. 36–3.

ton was the owner and Chief Executive Officer of St. Luke's, a nursing facility in San Leandro, California. At trial, former employees testified that Seaton instructed them to falsify nursing schedules, payroll reports, and time-cards to support Medicare reports. They also testified that Seaton instructed them to create a fictitious floor plan that segregated Medicare patients from non-Medicare patients and to tell auditors, falsely, that St. Luke's assigned more-expensive registered nurses to Medicare patients and less-expensive licensed vocational nurses to non-Medicare patients.

Appellants were indicted on May 8, 2001. Count 1—the conspiracy count—alleged that appellants inflated their cost reports and fabricated payroll reports, time-cards, and nursing schedules; submitted false cost reports for 1996, 1997, and 1998; created false nursing logs and schedules in preparation for a Medicare audit; and made false statements to auditors from Mutual of Omaha, a fiscal intermediary acting on behalf of the Medicare program, during its audit. Counts 2, 3, and 4—the false-claims counts—charged appellants with submitting false cost reports for 1996, 1997, and 1998. Counts 5 and 6 were related to the audit by Mutual of Omaha and charged appellants with making the false statement that "certain nurses worked 100% of their time on Medicare patients" (Count 5) and obstructing a federal audit by failing to furnish the actual nursing schedules necessary to assure

proper payment by the Medicare program (Count 6).

A jury returned a guilty verdict on all counts, and the district court sentenced Seaton to 78 months' imprisonment and three years' supervised release, denying his request for release pending appeal. St. Luke's was placed on probation for five years.[1]

## I. Materiality under 18 U.S.C. § 287

■ Appellants contend that their convictions on Counts 2, 3, and 4 should be reversed because the district court failed to give the jury a materiality instruction under 18 U.S.C. § 287. Although appellants proposed an instruction containing a materiality requirement, they withdrew it in response to the government's objection. The government argues that appellants therefore waived the issue under the doctrine of "invited error." See United States v. Hugs, 384 F.3d 762, 766–67 (9th Cir. 2004).

Our court has yet to resolve definitively whether materiality is required under § 287. See United States v. Taylor, 66 F.3d 254 (9th Cir.1995) (per curiam) (implicitly rejecting, without affirmatively holding, that there is no materiality requirement under § 287), cert. denied, 520 U.S. 1103, 117 S.Ct. 1105, 137 L.Ed.2d 307 (1997); see also Li v. Ashcroft, 389 F.3d 892 (9th Cir.2004) (stating, without affirmatively holding, that there is no materiality requirement under § 287).[2] Conse-

---

1. Seaton was released on bail by order of a two-judge panel of this court on May 24, 2005.

2. We hesitate to read Taylor and Li as holding that there is no materiality requirement under § 287 given intervening Supreme Court decisions that accord greater weight to legislative history over and above statutory text. See Neder v. United States, 527 U.S. 1, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999) (holding that

materiality is an element of 18 U.S.C. §§ 1341, 1343 and 1344 even though those statutes do not explicitly incorporate the term "material" because the legislative history indicates Congress intended to incorporate the common law meaning of "fraud," which included a materiality element); United States v. Wells, 519 U.S. 482, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997) (holding that there is no materiality element in 18 U.S.C. § 1014 because the term "material" was not included

quently, there is no "known right" that appellants could possibly have waived. *See United States v. Fiorillo*, 186 F.3d 1136, 1155 (9th Cir.1999). But neither is there plain error, since any instructional error is not "clear under current law." *United States v. Olano*, 507 U.S. 725, 734, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993); *see also United States v. Turman*, 122 F.3d 1167, 1170 (9th Cir.1997) ("When the state of the law is unclear at trial and only becomes clear as a result of later authority, the district court's error is perforce not plain."). Nor did the instruction undermine appellants' substantial rights or "seriously affect[ ] the fairness, integrity, or public reputation of judicial proceedings." *Fiorillo*, 186 F.3d at 1154 (internal citations and quotation marks omitted).

## II. Ambiguity in Medicare Reporting Requirements

Appellants argue that the district court erred in failing to grant their proffered instruction regarding ambiguity in the Medicare reporting requirements and in articulating the instruction in a way that confused the jurors. The court reviews jury instructions de novo "when the issue is whether the instructions given adequately presented the defendant's theory of the case." *United States v. Munoz*, 233 F.3d 1117, 1130 (9th Cir.2000). "[T]he relevant inquiry is whether the instructions as a whole are adequate to guide the jury's deliberation." *Id.*

We hold that the district court properly instructed the jury in accordance with the language from *Munoz*. The cases cited by appellants from other circuits are not on point; those cases involved good-faith efforts by Medicare recipients to interpret ambiguous rules, which often left room for

interpretation. *See, e.g., United States v. Migliaccio*, 34 F.3d 1517, 1525 (10th Cir. 1994). That is not the case here. The court's instructions were sufficiently clear and would by no means have confused a reasonable juror. *See Francis v. Franklin*, 471 U.S. 307, 316, 105 S.Ct. 1965, 85 L.Ed.2d 344 (1985).

## III. Unanimity Instruction

Appellants argue that the court erred by not instructing the jury on specific unanimity on Count 5 (false representation) and Count 6 (obstructing an audit). However, neither charge involved more than one distinct offense. Although the government attempted to prove the false statement by eliciting testimony from several different witnesses, "there is no general requirement that the jury reach agreement on the preliminary factual issues which underlie the verdict." *Schad v. Arizona*, 501 U.S. 624, 632, 111 S.Ct. 2491, 115 L.Ed.2d 555 (1991) (internal citation and quotation marks omitted).

█ Neither Count 5 nor Count 6 required the jury to consider a duplicitous count or, for that matter, multiple or complex findings warranting a unanimity instruction. This case, rather, "is a routine one in which the jury is called upon to make relatively simple inferences respecting criminal activity." *United States v. Ferris*, 719 F.2d 1405, 1407 (9th Cir.1983) (Kennedy, J.). There was no instructional error and, consequently, no plain error.

## IV. Appellants' Hearsay Objection

█ Appellants contend that the district court erroneously excluded "critical information" concerning Seaton's mental state when it sustained the government's hear-

---

in the statute and the legislative history indicates that Congress intended to include non-

material offenses).

say objection and prevented Orrin Grover, former counsel to St. Luke's, from providing certain testimony concerning his conversation with Seaton in preparation for the audit. The district court's hearsay rulings are reviewed for abuse of discretion. *United States v. Bishop*, 291 F.3d 1100, 1108 (9th Cir.2002).

We do not see how Grover's testimony could come in for anything other than the truth of the matter asserted, and therefore we conclude that the proffered testimony constituted inadmissible hearsay. Regardless, appellants were not "denied the right to present their defense." *Bishop*, 291 F.3d at 1109.

### V. *In Camera* Review of the Agent's Rough Notes

■ Appellants argue that the district court erred in failing to conduct an *in camera* review of the government's rough notes from interviews with St. Luke's employees under *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), to ensure that the notes did not contain exculpatory material. "[D]iscovery questions, including alleged *Brady* ... rulings," are reviewed for abuse of discretion. *United States v. Alvarez*, 358 F.3d 1194, 1210 (9th Cir.2004). To prevail, appellants "must show not only that the district court abused its discretion, but also that the abuse resulted in prejudice to [their] 'substantial rights.' " *Id.* (citing *United States v. Michaels*, 796 F.2d 1112, 1115 (9th Cir.1986)).

In this situation, unless a defendant can explain how the requested evidence might affect the outcome of the trial, the district court is under no obligation to conduct an *in camera* review. *See id.* at 1211 (holding that, in the absence of a showing of materiality, "the district court need not conduct an *in camera* review of the government's files for *Brady* evidence favorable to the

accused"); *see also United States v. Henke*, 222 F.3d 633, 642–43 (9th Cir.2000) (holding that the district court had no duty to conduct an *in camera* review of an agent's rough notes because "defendants made no showing that they might discover something exculpatory or impeaching"). Appellants fail to state with any specificity why the review was necessary; consequently, there is no basis for their request for an *in camera* review of the rough notes.

### VI. *Booker* Error and *Ameline* Remand

At sentencing, the district court calculated Seaton's final offense level to be 28 based on the following determinations:

| | |
|---|---|
| Base offense level | 6 |
| Upward adjustment for the loss of $1,621,343 | 12 |
| Enhancement for more than minimal planning | 2 |
| Enhancement for being an organizer/leader | 4 |
| Enhancement for abusing a special skill/position of trust | 2 |
| Enhancement for obstructing justice | +2 |
| | |
| Total | 28 |

Appellants argue that the district court's determinations regarding the upward adjustment and enhancements of Seaton's offense level are unconstitutional under *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and must be vacated. However, the district court made clear during sentencing that it would impose the same sentence under an advisory scheme. Thus, we see no reason for remand. *Cf. United States v. Ameline*, 409 F.3d 1073, 1077 (9th Cir.2005) (en banc) ("[I]f a particularly prescient sentencing judge, pre-*Booker*, had made and used the same extra-verdict findings under the same mandatory guidelines regime, but made clear that he was treating the Guidelines as advisory rather than binding, no Sixth Amendment violation would have occurred under *Booker.* ").

### VII. Loss Determination

Appellants' final argument is that the district court's loss determination for sentencing purposes is unsubstantiated. We review the district court's loss determination for clear error. *See United States v. King,* 257 F.3d 1013, 1025 (9th Cir.2001).

■ The Sentencing Guidelines provide a base offense level for fraud that increases in accordance with the amount of monetary loss. U.S.S.G. §§ 2F1.1(a), (b)(1). "For the purposes of subsection (b)(1), the loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information.... The offender's gain from committing the fraud is an alternative estimate that ordinarily will underestimate the loss." U.S.S.G. § 2F1.1, cmt. n. 9.

The government essentially submitted three different loss assessments, all of which are attempts to determine the difference between the amounts St. Luke's was entitled to receive and the amounts it did receive. First, the Indictment lists a figure of $1,621,343 in allegedly false claims. Second, at trial, the government attempted to re-calculate that figure as $2,979,100, which included amounts that were omitted from the Indictment figure and that defendants claimed (and received) under an exception to the "routine cost limit." Third, at sentencing, the government tried to simplify its calculation, essentially returning to the method used in the Indictment, excluding the routine-cost-limit exemptions and also excluding various overhead charges associated with nursing costs. This third figure totaled $1,539,800, roughly $80,000 less than the

Indictment figure.[3] The government argued that it was seeking repayment for *actual loss* to the government, not *intended loss,* the latter of which would have been higher because it would include everything St. Luke's attempted to claim, including reimbursements it was denied after the government began to suspect fraud.

The district court noted the difficulty in calculating loss and ultimately decided to credit the original Indictment figure. The court initially subtracted from the Indictment figure the amount to which St. Luke's would be entitled for the legitimate provision of services to Medicare patients and determined a total loss of $257,816. The court failed to realize that the Indictment already took that amount into consideration and, upon the government's motion for reconsideration which pointed out the district court's double-counting of the amount owed St. Luke's, recalculated the loss at $1,621,343. The district court gave appellants an additional opportunity to respond but found "nothing in the defendants' response convinc[ing] ... that the $1,621,343 figure is incorrect." The court reaffirmed its loss figure of $1,621,343.

The district court's conclusions on this rather complicated matter do not constitute clear error. The loss determination need only be an estimate, and, even if the government's proffered figure at the hearing was more correct than the original Indictment figure, the $80,000 differential is of no consequence for Sentencing Guidelines purposes, as the upward adjustment at issue requires a finding of loss between $1,500,000 and $2,500,000. *See* U.S.S.G. §§ 2F1.1(b)(1)(M) and (N) (2000).[4] *Accord*

---

**3.** As the government explained in its briefing, the $80,000 difference is based on (1) the error in the routine cost limit used in calculating the Indictment figure and/or (2) the

exclusion of overhead charges in the figure submitted at the hearing.

**4.** Had the district court considered intended loss as opposed to actual loss, *see* U.S.S.G.

*King,* 257 F.3d at 1025 ("Given the conflicting estimates presented to the court, the difficulty inherent in calculating loss caused by a mail fraud scheme and the liberality embodied in § 2F1.1 of the Guidelines, the court did not clearly err in determining the amount of loss and the attendant increase in offense level.").

For the reasons stated above, appellants' conviction and sentences are affirmed.

**AFFIRMED.**

§ 2F1.1, cmt. n. 8 (2000) (district court can consider either actual loss or intended loss), and/or losses incurred during the pre-Indictment period, *cf. United States v. Grice,* 319 F.3d 1174, 1177 (9th Cir.) (basing restitution order under the Victim Witness Protection Act in mail-fraud case upon related conduct for which the defendant was not convicted), *cert. denied,* 539 U.S. 950, 123 S.Ct. 2625, 156 L.Ed.2d 641 (2003), the figure could have been much higher than $2,500,000, triggering a larger enhancement.