IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 12, 2020

**STATE OF TENNESSEE v. JAMES ALEX GREER**

**Appeal from the Criminal Court for Putnam County**
**No. 2017-CR-480    Gary McKenzie, Judge**

_____

**No. M2019-00939-CCA-R3-CD**
_____

The Defendant, James Alex Greer, was convicted of attempted first degree premeditated murder, a Class A felony, and employing a firearm during the commission of a dangerous felony, a Class C felony, by a Putnam County Criminal Court jury. *See* T.C.A. §§ 39-12-101 (2014) (criminal attempt), 39-13-202(a)(1) (2014) (subsequently amended) (first degree premeditated murder), 39-17-1324 (2014) (subsequently amended) (employing a firearm during the commission of a dangerous felony). The trial court imposed sentences of eighteen years and six years, respectively, and ordered mandatory consecutive sentencing pursuant to Tennessee Code Annotated section 39-17-1324(e)(1), for an effective sentence of twenty-four years. On appeal, the Defendant contends that the trial court erred in denying defense counsel's mid-trial request to withdraw based upon the Defendant's attempt to waive the right to counsel and the Defendant's demand to proceed pro se. We affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE and TIMOTHY L. EASTER, JJ., joined.

Michael J. Rocco (on appeal and at motion for new trial), Sparta, Tennessee; Craig Fickling (at trial), District Public Defender; and John Hatfield (at trial), Assistant District Public Defender, for the Appellant, James Alex Greer.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Senior Assistant Attorney General; Bryant Dunaway, District Attorney General; Bret Gunn and Victor Gernt, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The Defendant's convictions relate to the attempted homicide of his wife with a handgun on March 13, 2017. The Defendant and the victim had been living separately for some time and had both retained counsel in anticipation of a divorce, but the Defendant had been staying temporarily in the victim's home at the time of the crimes.

The record reflects that the Defendant initially was represented by retained counsel. His retained attorney filed a motion to declare the Defendant indigent on the basis that the Defendant had lost access to marital funds. The attorney also requested funding for expert services for unspecified testing of the firearm involved in the offenses. The trial court found that the Defendant was indigent and granted the motion for funds for firearm testing. Later, the Defendant's attorney filed a motion to withdraw on the basis that the Defendant had, without the attorney's knowledge, sent an ex parte letter to the trial judge, in which the Defendant indicated a lack of confidence in his attorney's preparation of a defense. The court granted the motion to withdraw and appointed the public defender to represent the Defendant.

At the trial, the State offered the testimony of the victim, who testified that she had been sleeping and awoke to find the Defendant lying next to her holding a pistol inside a plastic bag, which had a hole for the pistol's barrel. She said the Defendant told her, "It's called assisted suicide. You're about to kill yourself, and I'm going to help." The victim stated that she reminded the Defendant of his earlier promise not to kill her and that the Defendant responded that he had lied. The victim said that the Defendant brought the gun to her temple, that she was able to grab the pistol's barrel, and that she fled to a neighbor's house with the pistol, where she called 9-1-1. The State also offered the testimony of a 9-1-1 call records custodian, the neighbor to whose house the victim fled after the offenses, the police officers who responded to the 9-1-1 call regarding the offenses, and other officers involved in the collection of evidence and the investigation. The State also presented evidence consisting of an audio recorded statement the Defendant gave to a detective. The State rested, and after the court denied the Defendant's motion for judgment of acquittal, the Defendant was advised of his rights in accord with *Momon v. State*, 18 S.W.3d 152 (Tenn. 1999), and waived his right to testify. Court was adjourned for the day.

The following morning, when the trial court reconvened, the trial judge noted that defense counsel and the Defendant had just been engaged in an animated discussion. Defense counsel advised the court that the Defendant no longer had confidence in his attorneys and preferred to proceed pro se. Counsel stated that he and co-counsel had advised the Defendant that they did not believe this course of action was in the Defendant's best interests. Counsel stated that the Defendant disagreed with the defense strategy and that the Defendant preferred to present witnesses to testify about facts which his attorneys believed were not relevant to the present case. Counsel stated that the Defendant had

advised him and co-counsel "throughout these proceedings that there are certain questions that he wished to have posed to certain witnesses," that counsel thought the questions were "frivolous," that the evidence the Defendant wanted to present might be relevant in a divorce action, and that counsel had made the decision not to present this evidence. The Defendant addressed the court and requested "a little bit of leeway" and a recess of twenty-four to forty-eight hours before presenting a defense. The Defendant indicated his lack of familiarity with the procedural rules of court and asked if the court or the district attorney would help him with the court's rules. The Defendant stated that he wanted to present two witnesses but that his attorneys "denied" his wishes. Counsel advised the court that the victim was one of the witnesses. The court denied counsel's motion to withdraw and the Defendant's attempt to waive the right to counsel and demand to proceed pro se. The Defendant stated that, in view of the court's denial of his demand to proceed pro se, he elected to testify. Defense counsel requested that the Defendant be allowed to make an offer of proof regarding the information the Defendant had wanted to offer as defense evidence. The court said it would permit this.

Thereafter, the Defendant testified as the defense sole witness. After the Defendant's testimony, defense counsel requested that the Defendant be allowed to make his offer of proof outside the presence of the jury. The trial court cautioned that the appropriate procedure for the Defendant's "giving a litany of complaints" was through an ineffective assistance of counsel claim in a post-conviction action, should the Defendant be convicted. No offer of proof was received at this time. The jury found the Defendant guilty of the charged offenses of attempted first degree murder and employing a firearm during the commission of a dangerous felony.

After the trial court imposed the sentence at a sentencing hearing, defense counsel moved to withdraw, citing the deterioration of the attorney-client relationship. The court granted the motion and appointed new counsel.

At the motion for a new trial hearing, the Defendant testified that, during the trial, he asked the trial court to relieve his appointed attorneys and permit him to finish the trial pro se. The Defendant stated that he had "made several suggestions and requests for tests, fingerprints, and testimony from [the victim]." He explained that the firearm involved in the offense and the plastic bag in which it had been stored "needed to be tested for fingerprints" because the victim had custody of the gun for several hours before the police collected it as evidence. He stated that he had not loaded a round of ammunition "into the firearm chamber of the pistol" and that he did not know who had. He said he wanted unspecified questions asked and unspecified witnesses called but that this did not happen. He said that some, but not all, of the witnesses he wanted to call were present in court for the trial. He said that he had wanted his attorneys to remain as advisory counsel "for advice on procedures and how to fill out the requests for – for the motion to get the fingerprints

and to get the results of all the fingerprint tests that they didn't do much of, but none – no questions were asked about it."

In denying the motion for a new trial on the basis that the Defendant was denied his right to proceed pro se, the trial court stated the following:

[W]e had gotten to a position where defense counsel had indicated that the question was whether or not the defendant was going to testify, which he did testify. He did in fact testify. Some may argue that that might not have been a wise decision. Maybe it was. I don't know. But he did end up testifying. But during that time, there's a transcript of that and all of that exchange.

And so we are all the way up to the eleventh hour of trial, and it was pretty obvious and apparent at that point, from the Court's perspective, that we have gotten to a place where it would seem that all of the evidence that had come in began to surround this defendant, and it became pretty clear, I believe at that point, that there was a significant amount of evidence on the state's side that was going to lead down a road to conviction. Now, you never know with a jury. Who knows. But there certainly was evidence in the record.

At that point, the defendant indicates that he wants to get rid of counsel, because he disagrees with – as he stated some things in the transcript, it's in there, having to do with who they're calling, who they're not calling.

There was indication from him that he didn't know about the rules, and he wanted a continuance.

And it seemed to appear to this Court that there was an attempt, or at least "trying," of the defendant to thwart the process. It seemed more of, "I'm going to try to – wait a minute. I don't like what's going on here. I don't like this. It needs to stop. This thing needs to stop." That seemed to be the feeling that this Court got from what the defendant had said, where we were, the time and place of the trial.

And so the question is, . . . at what point do we allow it to go? At what point do we allow defendant to come into courtrooms and get all the way up to the end, at least where a conviction seems to be at least a high probability considering the proof in the case, and at that point, are we going to allow them to try to derail the process? Because it is a process that the trial judge is vested with the discretion to conduct this trial, and conduct it in

-4-

an orderly manner, and to conduct it in a fair process. And to allow the defendant to come up to the very end, in the eleventh hour, to try to thwart that, in this Court's opinion, to allow a defendant to try to derail the justice that is possibly about to happen when the verdict is rendered, in favor of them or not in favor of them, and I, in my experience, it's never happened.

After the trial court denied the motion for a new trial, the Defendant filed the present appeal, in which he contends that the trial court erred in denying his demand to proceed pro se and that it applied an incorrect legal standard in evaluating the demand. The State counters that the court properly exercised its discretion in denying the Defendant's request.

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution afford a criminal defendant the right to counsel and, in the alternative, a right to represent oneself. *See Faretta v. California*, 422 U.S. 806, 814-18 (1975); *State v. Hester*, 324 S.W.3d 1, 30 (Tenn. 2010). Because the rights are alternatives to one another, a defendant may assert one but not both. *Hester*, 324 S.W.3d at 30. In order to exercise the right to represent oneself, a defendant must waive the right to counsel. *Id.* The requisites of a valid waiver of the right to counsel vary according to the stage of the proceedings. *Id.* In exercising the right to represent oneself at the trial stage, a defendant (1) must make a timely assertion of the right, (2) must be clear and unequivocal in his assertion, and (3) must knowingly and intelligently waive the right to the assistance of counsel. *Id.* at 30-31; *see State v. McCary*, 119 S.W.3d 226, 256 (Tenn. Crim. App. 2003). "[R]epresentation by counsel . . . is the standard, not the exception." *Martinez v. Court of Appeal of Cal.*, 528 U.S. 152, 161 (2000); *Hester*, 324 S.W.3d at 31. As such, a strong presumption exists against the waiver of the right to counsel. *Martinez*, 528 U.S. at 161; *Hester*, 324 S.W.3d at 30; *Lovin v. State*, 286 S.W.3d 275, 287, n.15 (Tenn. 2009). The exercise of the right to represent oneself may not be used as a tactic to obstruct, manipulate, disrupt, or delay the proceedings. *Hester*, 324 S.W.3d at 31.

Whether a defendant has waived his right to counsel and has asserted his right to represent himself is a mixed question of law and fact. *Id.*, 324 S.W.3d at 29. Appellate review is de novo with a presumption of correctness afforded to the trial court's factual findings. *Id.* at 29-30. This standard has been applied when the defendant's request is timely. *See, e.g., id.* Generally, a demand is timely if it is made before jury selection, provided it was not made in order to delay the proceedings. *State v. Michael Lewis*, No. W2001-03121-CCA-R3-CD, 2003 WL 1697689, at *10 (Tenn. Crim. App. Mar. 23, 2003); *see Chapman v. U.S.*, 553 F.2d 886, 887 (5th Cir. 1977); *see also U.S. v. Washington*, 353 F.3d 42, 46 (D.C. Cir. 2004); *United States v. Bishop*, 291 F.3d 1100, 1114 (9th Cir. 2002) ("A demand for self-representation is timely if made before meaningful trial proceedings have begun."); *United States v. Dougherty*, 473 F.2d 1113, 1124 (D.C. Cir. 1972) ( "[T]he fundamental right to conduct the case pro se is one that must be claimed timely, before the trial begins."). However, when the demand is made during the trial, the decision is vested

in the sound discretion of the trial court. *See State v. David G. Jenkins*, No. M2016-00270-CCA-R3-CD, 2017 WL 1425610, at \*26 (Tenn. Crim. App. Apr. 21, 2017), *perm. app. denied* (Tenn. Sept. 20, 2017); *Michael Lewis*, 2003 WL 1696789, at \*10.

In the present case, the Defendant's demand did not occur until after the close of the State's case-in-chief. As such, the request was not timely, and our review is limited to examination of whether the trial court abused its discretion. The record reflects that the trial court noted the Defendant's "eleventh hour" demand as being reactive and interposed for inappropriate purposes.

With regard to whether the Defendant's wavier of the right to counsel and his demand to represent himself were clear and unequivocal, the record reflects, and the trial court found, that the Defendant's focus was on delaying and disrupting the process. The record reflects, as well, that the Defendant indicated he needed help understanding the rules of court, further supporting the court's conclusion that his demand was rooted in a desire to delay and disrupt, as opposed to a desire to represent himself. The Defendant did not demonstrate a clear and unequivocal demand to represent himself and was instead focused on forestalling or diverting the case from its likely conclusion, given the evidence presented in the State's case-in-chief.

Turning to whether the Defendant knowingly and intelligently waived his right to counsel, we again note the trial court's finding that the Defendant's attempt to waive his right to counsel and demand to represent himself were propelled by the desire to delay and disrupt the proceedings by presenting irrelevant evidence. This belies a conclusion that the Defendant knowingly and intelligently waived the right to counsel, as opposed to having reacted in response to his dissatisfaction with his attorneys' decisions regarding the evidence that would or would not be offered in the defense case-in-chief.

We have also considered the Defendant's argument that the trial court failed to "adduce any facts for denying" the Defendant's demand to proceed pro se. We disagree. The record reflects that the court was heavily influenced by the Defendant's tardiness in making the demand and that the court found the Defendant's purpose was to disrupt and delay the proceedings due to his dissatisfaction with how the case was unfolding after the State's case-in-chief. By implication, the court's findings that the Defendant's focus was on his dissatisfaction with the case and his desire to disrupt and delay the proceedings, the court rejected a knowing and voluntary waiver of the right to counsel and an expression of a genuine desire for the Defendant to represent himself. We note, as well, that the court permitted the Defendant to further address the issue at the hearing on the motion for new trial but that the court remained unconvinced after receiving the Defendant's testimony regarding the issue.

Upon review, we conclude that the trial court did not abuse its discretion in denying the Defendant's attempt to waive his right to counsel and demand to represent himself for the remainder of the trial.

In reaching this conclusion, we have considered the Defendant's argument that the evaluation of a defendant's mid-trial assertion of the waiver of counsel and demand to proceed pro se should not be left to the sound discretion of a trial court and should, instead, be subject to the court's "informed discretion." Accordingly, the Defendant argues that a court's discretion should be informed by balancing prejudice to a defendant with several factors: (1) disruption to the proceedings, (2) delay, (3) possibly jury confusion, (4) the reason for the request, and (5) the quality of a defendant's current counsel. The Defendant relies on cases from other jurisdictions which were cited by a panel of this court in *Michael Lewis*. *See Michael Lewis*, 2003 WL 1697689, at *10 (citing *State v. Vermillion*, 51 P.3d 188 (Wash. App. 2002); *State v. Collins*, 893 P.2d 217 (Kan. 1995); *People v. Burton*, 771 P.2d 1270 (Cal. 1989) (in bank)). The *Michael Lewis* panel cited these cases without explicitly adopting the five factors that the Defendant argues should be balanced against the prejudice to a defendant. We are not inclined to consider the extent to which, if any, the Defendant's proposed "informed discretion" standard departs from the "sound discretion" standard utilized in previous decisions of this court relative to belated, mid-trial waiver of counsel and demand to represent oneself is vested in the trial court's discretion. *See David G. Jenkins*, 2017 WL 1425610, at *26; *Michael Lewis*, 2003 WL 1696789, at *10. Rather, we have adhered to the standard followed by previous panels in reaching our conclusion that no abuse of discretion occurred in the present case.

In consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
ROBERT H. MONTGOMERY, JR., JUDGE